[Cite as *State v. Gipson*, 2022-Ohio-2069.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY


State of Ohio                                      Court of Appeals No.  OT-21-001
                                                                        OT-21-002
        Appellee                                OT-21-003

                                                  Trial Court No.  20CR170
                                                                   20CR074
                                                                   19CR126
v.

Jody Gipson                                       **<u>DECISION AND JUDGMENT</u>**

        Appellant                               Decided:  June 17, 2022

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Blake W. Skilliter, Assistant Prosecuting Attorney, for appellee.

Anthony J. Richardson, II, for appellant.

* * * * *

**MAYLE, J.**

## I.  Introduction

{¶ 1} In these consolidated appeals, the defendant-appellant, Jody Gipson,

challenges three October 30, 2020 judgments by the Ottawa County Court of Common

Pleas. Gipson pled guilty to multiple drug-related offenses, and the trial court sentenced him to an indefinite prison term of 14 to 18 years and $22,500 in fines. Gipson challenges his sentence in multiple respects and claims that his guilty pleas were involuntary, necessitating a remand and trial. As set forth below, we affirm the trial court's judgment.

## II. Background

{¶ 2} On June 27, 2019, Gipson was indicted on five drug-related offenses: two counts of aggravated possession of methamphetamine, trafficking in methamphetamine, possession of criminal tools, and money laundering. (Ottawa County Court of Common Pleas case No. 19CR126). At the change-of-plea hearing, Gipson pled guilty to a single count of aggravated possession of methamphetamine, in violation of R.C. 2925.11(A) and (C)(1)(c), a felony of the second degree (Count 1). The offense was subject to the provisions of the Reagan Tokes Law, which sets forth an indefinite sentencing scheme for certain qualifying first and second-degree felonies committed on or after March 22, 2019. Thus, Gipson was advised that his maximum sentence included an indefinite prison term of eight to 12 years, of which between two to eight years was mandatory and a maximum possible fine of $15,000, of which $7,500 was mandatory. In exchange for his guilty plea, the state agreed not to prosecute the remaining offenses. The trial court accepted the plea, found Gipson guilty and set the matter for sentencing.

**{¶ 3}** While awaiting sentencing, Gipson was indicted on new charges of aggravated trafficking (Counts 1-3) and aggravated possession (Count 4) of methamphetamine. (Ottawa Co. C.C.P. case No. 20CR074). From his jail cell, Gipson was alleged to have contacted his young son, in violation of a protective order, and was indicted a third time. (Ottawa Co. C.C.P. case No. 20CR170).

**{¶ 4}** A change-of-plea hearing was held with regard to the new indictments. In case No. 20CR74, Gipson agreed to plead guilty to two counts of aggravated trafficking in methamphetamine, in violation of R.C. 2925.03(A)(1) and (C)(1)(b), both felonies of the third degree (Count 1 and Count 2, as amended) and aggravated possession of methamphetamine, in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the third degree (Count 4, as amended). Gipson was advised that his maximum sentence, as to each count, was a basic prison term of 36 months, of which none was mandatory and a maximum fine of $10,000, of which $5,000 was mandatory. Gipson was also told that he could be ordered to serve the sentences consecutively to each other and consecutively to the sentence imposed in the other felony drug case.

**{¶ 5}** In case No. 20CR170, Gipson agreed to plead guilty to violating a protective order, in violation of R.C. 2919.27(A)(2) and (B)(2), a misdemeanor of the first degree. Gipson was advised that the maximum sentence included a basic jail term of 180 days and a $1,000 fine, neither of which was mandatory.

3.

**{¶ 6}** The trial court accepted Gipson's plea in both cases, entered findings of guilt and ordered the preparation of a presentence investigation ("PSI").

**{¶ 7}** Sentencing was held with respect to all three cases on October 29, 2020. After hearing from the parties and the mother of the Gipson's young son, the trial court sentenced Gipson to an indefinite prison term of eight to 12 years in case No. 19CR126 and 24 months as to Count 1, 2, and 4 in case No. 20CR074, all terms to be served consecutively to one another, for a total period of incarceration of 14 to 18 years. Additionally, the trial court ordered Gipson to pay the mandatory fine of $7,500 and to forfeit $3,839.07 in case No. 19CR126. It ordered him to pay the mandatory fine of $5,000 in Counts 1, 2, and 4 and to forfeit $505 and his vehicle in case No. 20CR074. In the misdemeanor case, the court ordered Gipson to serve 180 days, concurrent to the felony sentences, and to pay $1,000 in fines (case No. 20CR170).

**{¶ 8}** Gipson appealed the judgments and raises the following assignments of error:

**FIRST ASSIGNED ERROR**: The trial court committed error by sentencing appellant to consecutive terms where the sentences are disproportionate to the seriousness of appellant's conduct.

**SECOND ASSIGNED ERROR**: The trial court committed error by not properly informing defendant about judicial release when he entered his plea.

4.

**THIRD ASSIGNED ERROR**:  The trial court committed error by imposing fines on appellant without making the necessary findings.

**FOURTH ASSIGNED ERROR**:  The trial court committed error by failing to properly apply the plain meaning and legislative intent of applicable statutes when sentencing appellant.

{¶ 9} For ease of discussion, we address Gipson's assignments of error out of order.

### III. Judicial Release

{¶ 10} In his second assignment of error, Gipson argues that his guilty plea in case No. 19CR126 was involuntary because the trial court "misadvised" him regarding his eligibility for judicial release.  Gipson seeks an order of remand to allow him to withdraw his guilty "pleas."

{¶ 11} A plea of guilty or no contest in a criminal case "must be made knowingly, intelligently, and voluntarily.  Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).  Crim.R. 11(C)(2) provides that "felony defendants are entitled to be informed of various constitutional and nonconstitutional rights, prior to entering a plea." *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 6.  "When a defendant seeks to have a plea vacated on appeal because the plea was not entered in a knowing, intelligent and

5.

voluntary manner due to the trial court's failure to comply with Crim.R. 11, 'the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses [an appellant] from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the [appellant] met that burden?'" *State v. Morgan*, 6th Dist. Lucas Nos. L-20-1156, L-21-1017, L-21-1018, 2021-Ohio-3996, ¶ 15, quoting *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 17.

{¶ 12} As Gipson acknowledges, Crim.R. 11 "does not require courts to inform a defendant of his eligibility for judicial release." *State v. McGill,* 8th Dist. Cuyahoga No. 108469, 2020-Ohio-575, ¶ 17; *see also State v. Oliver*, 6th Dist. Sandusky No. S-10-040, 2011-Ohio-5305, ¶ 18 ("Under Crim.R. 11(C)(2), a trial court is not required to advise a defendant regarding eligibility for judicial release."); *State v. Kinney*, 1st Dist. Hamilton No. C-160415, 2018-Ohio-404, ¶ 22 ("[T]he trial court is under no obligation to inform a defendant regarding his eligibility for judicial release."). Therefore, the failure to include such information in the court's colloquy does not violate a defendant's Crim.R. 11 rights. However, if a defendant who pleads guilty is misled as to whether he would be eligible for judicial release or when he becomes eligible to apply for judicial release, the guilty plea may be invalidated if the defendant can show that he prejudiced by the misstatement. *Kinney* at ¶ 25. The test for prejudice is "whether the plea would have otherwise been made." *Dangler* at ¶ 16.

6.

**{¶ 13}** A trial court may grant judicial release and modify a sentence only as provided for by statute. *State v. Cunningham,* 113 Ohio St.3d 108, 2007-Ohio-1245, 863 N.E.2d 120, ¶ 23, citing R.C. 2929.20. When a defendant's entire sentence is mandatory, he is ineligible for judicial release. *State v. Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, 22 N.E.3d 1082, ¶ 11. However, when a defendant is sentenced to mandatory prison term(s) and non-mandatory term(s), judicial release is not foreclosed. Thus, a prisoner "cannot apply for judicial release until a period of time 'after the expiration of all mandatory prison terms' in the stated prison sentence." *Id.,* quoting R.C. 2929.20(C).

**{¶ 14}** At the change-of-plea hearing involving the first indictment, Gipson entered a guilty plea with respect to a single offense, i.e. aggravated possession of drugs. Gipson was advised that he faced a maximum basic prison term of eight to twelve years, of which between two to eight years was mandatory (case No 19CR126; hereinafter referred to as "the first case"). The trial court advised Gipson that "[y]ou are, however, or would be eligible for Judicial Release. Now when you became eligible for Judicial Release would depend on your initial sentence."

**{¶ 15}** On appeal, Gipson makes no mention of the court's misstatement. However, the state "concedes that the Court misspoke when it stated [that] Gipson would be[come] eligible" at some point during his mandatory sentence.

**{¶ 16}** In support of his claim—that his plea in the *first* case was involuntary— Gipson cites the September 15, 2020 change-of-plea hearing, which concerned the

7.

*second* and *third* cases (case Nos. 20CR74 and 20CR170).  Gipson complains that the trial court "confused" him because it indicated that he "could be eligible for judicial release, when in fact he would have to serve his entire mandatory prison term."

{¶ 17} None of the offenses that he pled guilty to at that September hearing required a mandatory sentence.  That is, in the second case, Gibson faced a maximum penalty of 36 months, as to each of the three felony offenses, but none was mandatory.[1]  Relative to judicial release, the court told Gibson,

> [The court]:  Okay.  When it comes to sentencing, I will have two options.  One is to send you to prison and the other is to place you on probation.
>
> If you are sent to prison, you could shorten your prison time in a couple of ways.
>
> * * *
>
> You could be eligible for Judicial Release.  When you become eligible for Judicial Release would be dependent upon what your original sentence was.  The final decision about Judicial Release remains with the Court.  Do you understand that?
>
> [Gipson]:  Yes sir.  (Sept. 15, 2020 Tr. at 15).

---

[1]  Likewise Gibson faced a non-mandatory sentence in the misdemeanor case (violating a protective order).  However, the judicial release statute does not apply to misdemeanor offenses.

8.

{¶ 18} Had the trial court's explanation been limited to the felony offenses to which Gipson was actually pleading guilty to that day—all of which provided for nonmandatory prison time—then it would have been correct. Under to R.C. 2929.20(C)(4), an eligible offender-serving an "aggregated nonmandatory prison term or terms [of] more than five years but not more than ten years * * * may file the motion [for judicial release] not earlier than the date on which the eligible offender has served five years of the offender's stated prison term * * *." In Gipson's case, the maximum aggregated nonmandatory prison terms amounted to three 36-month sentences, or 9 years. But, also pending at that hearing was the first case and its mandatory sentence. Because of the mandatory prison term in that case, Gipson would have been eligible to apply for judicial release "no[] earlier than five years after the expiration of [the] mandatory prison term[]." R.C. 2929.20(C)(4).

{¶ 19} We find that the trial court's explanations failed to fully comply with Crim.R. 11(C)(2). That is, the trial court initially failed to explain to Gipson that he was ineligible for judicial release (in the first case) and subsequently failed to explain (in the second case) that he would not be eligible to apply for judicial release until a certain amount of time had elapsed and only then, after serving his mandatory sentence. Therefore, we agree with Gipson that the trial court misstated the law regarding judicial release as applicable to him, establishing that the court did not fully comply with Crim.R. 11.

9.

{¶ 20} But, Gipson must also show that prejudice occurred, i.e., that "but for the misrepresentation regarding judicial release, he would not have entered the plea." *State v. Mitchell,* 11th Dist. Trumball No. 2004-T-0139, 2006-Ohio-618, ¶ 15; *Dangler* at ¶ 23. Moreover, prejudice must be established "on the face of the record." *Dangler* at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.,* 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26.

{¶ 21} Gipson claims that he would not have entered into the plea agreement had he known the trial court "misadvised" him, but he offers no facts from the record to show that that is actually the case.

{¶ 22} By contrast, the state points to the written plea agreements from the felony cases, both of which contain a proper explanation of the law. Thus, Gipson acknowledged in the first agreement that "[i]f I am sentenced to prison, I understand that I may be eligible to apply for judicial release after serving the mandatory time, if any, and a certain amount of prison time and the earliest date that I may apply depends on the total length of my prison sentence. ORC §2929.20." According to the record, Gipson discussed the agreement for "about an hour," before the change-of-plea hearing. Gipson executed a similarly-worded plea agreement in the second case.

{¶ 23} Upon review, we find no facts in the record to suggest that the possibility of judicial release factored, in any way, in Gipson's decision to plead guilty in any of the cases and specifically in case No. 19CR126. Therefore, we cannot say that Gipson's

10.

pleas were entered unknowingly, unintelligently or involuntarily. Accordingly, we find Gipson's second assignment of error not well-taken.

## IV. Sentencing Challenges

{¶ 24} We review a challenge to a felony sentence under R.C. 2953.08(G)(2), which provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 25} A sentence is not clearly and convincingly contrary to law where the trial court has considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the statutory range. *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 15-16, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

## A. Mandatory Prison Time

{¶ 26} In his fourth assignment of error, Gipson argues that only two years of the eight to 12-year sentence imposed in case No. 19-CR-126 should have been deemed mandatory and, therefore, his sentence was contrary to law.

{¶ 27} Again, Gipson was convicted of aggravated possession of methamphetamine, in violation of R.C. 2925.11(A), in that case. The penalty for that offense "shall be determined as follows: (c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and *the court shall impose as a mandatory prison term a second degree felony mandatory prison term*. (Emphasis added.) R.C. 2925.11(C)(1)(c).

{¶ 28} Consistent with the Reagan Tokes Act, the prison range for Gibson's second degree felony offense required an "indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code." (Emphasis added.) R.C. 2929.14(A)(2). *See, e.g. State v. Searls*, 2d Dist. Montgomery No. 28995, 2022-Ohio-858, ¶ 23, citing R.C. 2929.14(A)(1)(a); R.C. 2929.14(A)(2)(a); R.C. 2929.144 ("The [Reagan Tokes Act] requires the trial court to impose an indefinite prison term with a stated minimum term and a calculated maximum term."). Here, based upon Gibson's offense, his maximum sentence included an indefinite prison term of eight

12.

to 12 years, of which between two to eight years was mandatory—a fact that he acknowledged in writing and when he pled guilty.

{¶ 29} At sentencing, the trial court selected a minimum term of eight years, the maximum amount allowed under R.C. 2929.14(A)(2), which, by operation of R.C. 2929.144, resulted in a maximum term of twelve years. Consistent with that decision, Gipson was sentenced to an "indefinite prison term of eight (8) to twelve (12) years." (Oct. 20, 2020 J.E. at 3).

{¶ 30} On appeal, Gibson challenges only the mandatory term of his sentence. He contends that "only 2 years of the imposed prison term should be deemed mandatory," not the full eight years. We disagree.

{¶ 31} Pursuant to the express terms of R.C. 2929.14(A)(2), "the trial court *first must select*, for each offense, a stated minimum term from the appropriate statutory range." (Emphasis added.) *Searls* at ¶ 26. In other words, the trial court *was required* to select a minimum term, which it did. "A trial court has full discretion to levy any sentence within the authorized statutory range." *Id.* Here, the eight-year term that the court chose was within the sentencing range for Gibson's offense. And, while the trial court was authorized to select any of the terms provided for in Section (A)(2), including Gibson's preferred term of two years, once it selected an eight-year term, the entirety of that stated minimum term was mandatory, by operation of law. *State v. Ware,* 141 Ohio St.3d 160, 2014-Ohio-5201, 22 N.E.3d 108, ¶ 14.

13.

{¶ 32} Gipson cites R.C. 2929.13(F)(5) to support his claim that only two years of the eight-year term is mandatory. But, that statute undercuts, rather than supports, his argument. It provides, in relevant part,

(F) * * * [T]he court shall impose a prison term or terms under * * * section 2929.14 * * * of the Revised Code and except as specifically provided in section 2929.20, divisions (C) to (I) of section 2967.19, or section 2967.191 of the Revised Code or when parole is authorized for the offense under section 2967.13 of the Revised Code shall not reduce the term or terms pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967 or Chapter 5120 of the Revised Code for any of the following offenses: (5) A * * * second * * * degree felony drug offense for which section * * * 2925.11 * * * of the Revised Code * * * requires the imposition of a mandatory prison term. (Emphasis added.)

{¶ 33} By its terms, R.C. 2929.13(F)(5) "instructs that a court 'shall not reduce' [a mandatory prison term]," through judicial release or parole, for a violation of R.C. 2925.11. *See, e.g. State v. Ballard,* 12th Dist. Butler No. CA2014-09-197, 2015-Ohio-2084, ¶ 10. In short, and contrary to Gipson's theory, R.C. 2929.13(F) simply does not allow a trial court to reduce a mandatory prison term. *State v. Lausin*, 11th Dist. Geauga No. 2016-G-0055, 2016-Ohio-5184, ¶ 20-21, quoting *Ware* at ¶ 13-14. Once the trial

14.

court selected a minimum term, it became indivisible. Indeed, "[n]o sentencing statute allows a court to divide a singular 'mandatory prison term' into a hybrid of mandatory and discretionary *sub*-terms. *Ware* at ¶ 17. Despite Gibson's claim, the trial court had "no power to substitute a different sentence for that provided for by statute." *Ware* at ¶ 17, quoting *Colegrove v. Burns,* 175 Ohio St. 437, 438, 195 N.E.2d 811 (1964).

{¶ 34} For these reasons, Gipson's sentence was not contrary to law, and his first assignment of error is overruled.

### B. Mandatory Fines

{¶ 35} Next, we address Gibson's third assignment of error, in which he argues that the trial court erred in imposing $22,500 in fines because it failed to consider his present and future ability to pay.

{¶ 36} In reviewing a trial court's imposition of costs and financial sanctions as part of a felony sentence, we apply the standard set forth in R.C. 2953.08(G)(2)(b), inquiring whether the imposition of costs and financial sanctions is clearly and convincingly contrary to law. *State v. Kelly*, 6th Dist. Wood No. WD-16-015, 2017-Ohio-674, ¶ 10; *see also State v. Hayes,* 1st Dist. Hamilton No. C-190461, 2020-Ohio-5322, ¶ 57 (Reviewing an order of restitution under R.C. 2929.18(A)).

{¶ 37} R.C. 2929.18(B)(1) provides that, for second and third degree felony violations of R.C. Chapter 2925, "the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine

amount authorized for the level of the offense pursuant to R.C. 2929.18(A)(3)." For a felony of the second degree, R.C. 2929.18(A)(3)(b) allows a fine of "not more than [$15,000]." For a felony of the third degree, Section (A)(3)(c) allows a fine of "not more than [$10,000]."

{¶ 38} Here, Gipson was convicted of four offenses under R.C. Chapter 2925: one (1) second-degree offense and three (3) third-degree offenses. Thus, the trial court was required to impose a fine of at least $7,500 as to the second degree offense and at least $5,000 as to the third degree felony offenses, which are exactly the fines that the trial court imposed. R.C. 2925.11(E)(1)(a) and 2929.18(B)(1),

{¶ 39} R.C. 2929.18(B)(1) does allow a defendant to challenge the imposition of a mandatory fine. Thus, "[i]f an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine * * *, the court shall not impose the mandatory fine upon the offender." *Id.* To avoid imposition of a mandatory fine, two things must occur: "(1) the offender must submit an affidavit of indigency prior to sentencing, and (2) the trial court must make a determination that the offender is an indigent person and is unable to pay the mandatory fines." *State v. Gipson*, 80 Ohio St.3d 626, 633, 687 N.E.2d 750 (1998). *See also State v. Carriger*, 12th Dist. Butler No. CA2016-06-198, 2017-Ohio-1330, ¶ 7.

16.

**{¶ 40}** In this case, no affidavit of indigency was filed in connection with the mandatory fines. Although Gipson was found to be indigent for purposes of appointing him trial counsel, it is well-established that a determination that a defendant is indigent for purposes of appointed counsel is separate and distinct from a determination of being indigent for purposes of paying a mandatory fine. *See, e.g., State v. Banks,* 6th Dist. Wood Nos. WD-06-094, WD-06-095, 2007-Ohio-5311, ¶ 15, *State v. Bolden,* 12th Dist. Preble No. 35, 2004-Ohio-184, ¶ 35.

**{¶ 41}** Moreover, R.C. 2929.18(B)(1) "clearly requires" the offender to file the affidavit "with the court prior to the filing of a journal entry reflecting the trial court's sentencing decision." *Gipson* at 631. Where an affidavit of indigency is not properly filed prior to sentencing, that fact "is, standing alone, a sufficient reason to find that the trial court committed no error by imposing the statutory fine." *Id.* at 633.

**{¶ 42}** Accordingly, because Gipson did not file an affidavit alleging that he was indigent and unable to pay the mandatory fines prior to sentencing, the trial court was not required to consider Gipson's ability to pay those fines, and it did not err when it imposed the mandatory fines pursuant to R.C. 2929.18(B)(1). *Carriger* at ¶ 9, citing *State v. Parsley*, 10th Dist. Franklin No. 09AP-612, 2010-Ohio-1689, ¶ 54; *Gipson* at 633. Indeed, the imposition of the fines was mandated by law. *Bolden* at ¶ 37. Accordingly, Gipson's third assignment of error is found not well-taken.

17.

## C. Consecutive Sentencing

**{¶ 43}** Gipson's final sentencing challenge involves the trial court's decision to impose consecutive sentences.

**{¶ 44}** In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order a defendant to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. R.C. 2929.14(C)(4) provides,

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

18.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 45} Thus, to impose consecutive sentences for convictions of multiple offenses, a trial court must make three statutory findings. *State v. Beasley,* 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252. First, the court must find that "consecutive sentences are necessary to protect the public or to punish the offender." *Id.* Second, the court must find that consecutive sentences "are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public." *Id.* Third, the court must find that R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Id.* "[A] trial court must state the required findings as part of the sentencing hearing, * * * [a]nd because a court speaks through its journal, the court should also incorporate its statutory findings into the sentencing entry." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. While the sentencing court is required to make findings under R.C. 2929.14(C)(4) before imposing consecutive sentences, it is not required to

give reasons explaining the findings. *State v. Kubat*, 6th Dist. Sandusky No. S-13-046, 2015-Ohio-4062, ¶ 33. However, the record must contain evidence to support the trial court's findings. *Bonnell* at ¶ 29, citing R.C. 2953.08(G)(2)(a).

{¶ 46} Gipson acknowledges that the trial court made all of the required findings under R.C. 2929.14(C)(4). Indeed, the court explained,

> The Court finds that consecutive sentences are necessary to protect the public from future crime, or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger that he poses to the public.

> The Court finds the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. (Oct. 29, 2020 Tr. at 16-17.)

{¶ 47} Those findings are also reflected in the trial court's October 30, 2020 judgment entries.

{¶ 48} On appeal, Gipson argues that the record does not support one of the court's findings, specifically that consecutive sentences are not disproportionate to the seriousness of Gibson's conduct. Pursuant to R.C. 2953.08(G), the burden is on Gipson to identify clear and convincing evidence in the record that the court's finding is not supported by the record. *State v. Kiefer*, 6th Dist. Ottawa No. OT-21-005, 2021-Ohio-3059, ¶ 8 citing *State v. Torres,* 6th Dist. Ottawa No. OT-18-008, 2019-Ohio-434, ¶ 6.

20.

**{¶ 49}** Gipson argues that the trial court "could not" have found—under R.C. 2929.14(C)(4)—that consecutive sentences are not disproportionate to the seriousness of his conduct, in light of its other finding—under R.C. 2929.12—that "the more serious factors do not outweigh the less serious factors." (October 30, 2020 J.E. at 3).

**{¶ 50}** R.C. 2929.12, entitled "Factors to consider in felony sentencing," requires a trial court, in part, to determine whether the defendant's conduct is more, or less, serious than conduct normally constituting the offense. R.C. 2929.12(B) and (C). In his brief, Gipson addresses each factor set forth in R.C. 2929.12(B) and (C) as a means of demonstrating that the trial court's proportionality determination, under R.C. 2929.14(C)(4), is unsupported by the record. We reject Gipson's attempt to conflate the two statutes.

**{¶ 51}** "When imposing a felony sentence, a trial court is required to consider certain factors established in R.C. 2929.12 to determine the appropriate sentence *for each conviction.*" (Emphasis added.) *Kiefer* at ¶ 17, citing *State v. Gwynne,* 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 17. In *Gwynne,* the Ohio Supreme Court specified that R.C. 2929.12 applies "only to *individual* sentences." (Emphasis in the original.) *Id.* Moreover, a sentencing judge "must *first* impose a sentence for each count by considering the purposes and principles of felony sentencing under R.C. 2929.11 and 2929.12" before it orders "consecutive service * * * under R.C. 2929.14(C)(4)." (Emphasis added.) *Id.* A court of appeals "err[s] by reviewing [a challenge to the

21.

imposition of] consecutive sentences under R.C. 2929.11 and 2929.12." *Id.* at ¶ 18. Accordingly, Gipson's reference to, and reliance upon, the factors set forth in R.C. 2929.12(B) and (C)—as a means of demonstrating error by the trial court under R.C. 2929.14(C)(4)—is not well-taken.

{¶ 52} We also specifically reject Gipson's portrayal of his drug offenses as "victimless crimes." Gipson argues that the only person, besides himself, who was harmed in these cases was the confidential informant, whom Gipson describes as "not a victim."

{¶ 53} Gipson acknowledged that he first sold methamphetamine to a man looking for "some drugs" and that Gipson "got him what drugs he wanted." A few weeks later, the man called again, but this time, "he was working off some of his charges with the Drug Task Force." In other words, Gipson *did* victimize the buyer, who faced his own addiction and legal problems that were, at a minimum, exacerbated by Gipson. Further, and more broadly, the possession, use, and distribution of illegal drugs "represent one of the greatest problems affecting the health and welfare of our population." *Treasury Emps. v. Von Raab*, 489 U.S. 656, 668, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). By his actions, Gibson directly contributed to that problem by repeatedly polluting his community with illicit drugs. His was not a victimless crime. *Accord State v. Allen*, 2d Dist. Montgomery No. 29273, 2022-Ohio-1419, ¶ 14 (Finding trial court's conclusion—

22.

that defendant's possession of marijuana was a victimless crime—to be both "incorrect and misleading.").

**{¶ 54}** Finally, we add that the record contains ample evidence to support the trial court's finding that consecutive sentences "are not disproportionate to the seriousness of the offender's conduct." Gipson was found with a "significant" amount of methamphetamine, twice, in June of 2019. However, not even the threat of mandatory prison time deterred Gipson from continuing to traffic in drugs, which he engaged in no fewer than three times in April and May of 2020. No doubt Gipson is, as he describes himself, an "addict," but he is also a "menace" to his community, as he was described at sentencing. Upon review, we find no evidence, much less clear and convincing evidence, that the record does not support the trial court's finding that the imposition of consecutive sentences is not disproportionate to the seriousness of Gipson's conduct in these cases.

**{¶ 55}** "As long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Smith,* 6th Dist. Wood No. WD-19-082, 2021-Ohio-150, ¶ 15, quoting *Bonnell* at ¶ 29. Here, the trial court engaged in the correct analysis, and Gipson has failed to meet his burden of identifying clear and convincing evidence that the trial court's findings are not supported by the record. Accordingly, we find Gipson's first assignment of error not well-taken.

23.

## V. Conclusion

{¶ 56} For the reasons set forth above, Gipson's assignments of error are found not well-taken, and the October 30, 2020 judgments of the Ottawa County Court of Common Pleas in case Nos. 19CR126, 20CR074, and 20CR170 are hereby affirmed. Costs are assessed to Gipson pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.