[Cite as *State v. Wyke*, 2025-Ohio-4990.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :

     Plaintiff-Appellee,              :     Case No. 24CA10 and 24CA11

     v.                               :

                                   :     <u>DECISION AND JUDGMENT</u>
NOAH E. WYKE,                           :     <u>ENTRY</u>

     Defendant-Appellant.             :

_____

APPEARANCES:

L. Scott Petroff, Athens, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

_____

Smith, P.J.

{¶1} Noah E. Wyke, "appellant," appeals two separate judgment entries of sentence, both filed March 6, 2024, in the Ross County Court of Common Pleas. Appellant entered pleas to three felony counts which arose from two separate cases. These cases have been consolidated for purposes of appeal. Herein, appellant challenges (1) the trial court's denial of his oral motion to withdraw his pleas; and (2) the consecutive nature of his sentence. Based on our review of the record, we find no merit to appellant's two

assignments of error.  Accordingly, both are overruled and the judgment of the trial court is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On April 28, 2023, appellant was indicted on one count, Possession of a Fentanyl-Related Compound, R.C. 2925.11, a felony of the third degree.  This count was assigned Ross County Common Pleas case number 23CR205.  On October 6, 2023, appellant was indicted on three counts:  (1) and (2) Having Weapons While Under Disability, R.C. 2923.13. felonies of the third-degree; and (3) Assault, R.C. 2903.13, a misdemeanor of the first degree.  This indictment was assigned Ross County Common Pleas case number 23CR432.  At both arraignments on the separate cases, appellant entered not guilty pleas.  Throughout the trial court proceedings, appellant remained out of jail on a recognizance bond.

{¶3} On December 13, 2023, the State and appellant reached a plea agreement in case number 23CR205.  The following discussion occurred in open court:

| | |
|---|---|
| Court: | It's case number 23CR205.  The matter is before the court for a plea hearing as the parties have advised that an agreement has been reached…Could the parties state the terms of the plea agreement? |
| Willie: | Yes, Your Honor.  So, this is a conditional recommendation.    Mr. Wyke  has  two |

> cases…The parties understand that if he is found guilty in the later case, the 432, which involves a weapons under disability count, the court would sentence Mr. Wyke to a prison sentence…Therefore, the State is going to make a conditional recommendation. If Mr. Wyke pleads guilty to this, the sentencing will be set out until after the trial in the other case.  If he is found not guilty and the case dismissed, the state would recommend in this case community control with the condition of a CBCF…and a high stated sentence, 36 months as stated.  It's my understanding that if he is found guilty in the trial in January for 432 and is sentenced to prison, the prosecutor will recommend prison for this case instead of community control for that. Additionally, Your Honor, the State is…agreeing that Mr. Wyke's bond will stay put after his plea barring any other---any misconduct or anything like that outside of court…The State is not going to ask for, as a result of his plea, his bond being modified.

Thereafter, appellant entered a guilty plea, presented for his pre-sentence investigation (PSI), and a PSI report was prepared dated December 18, 2023.

{¶4} On January 23, 2024, appellant was back in court on case number 23CR432, and the parties reached another plea agreement.  The trial court asked appellant's attorney to relate the terms of the plea agreement, which was as follows:

> The State is going to either dismiss or not prosecute the third count in the indictment the misdemeanor.  Mr. Wyke will plead guilty to both weapons under disabilities offenses.  We stipulate to the State's that the counts merge.

> The State would recommend a sentence of nine months. Additionally, Your Honor, the case he previously pled to, the possession count, the State is going to recommend nine months on that case at sentencing, concurrent to nine months in this case. Additionally, parties are going to recommend sentencing be set out. Mr. Wyke's bond be continued…until he comes back for sentencing.

Appellant then entered guilty pleas to Counts One and Two.

{¶5} Disposition of these matters was scheduled for February 15, 2024. However, on that date, appellant failed to appear. Appellant's attorney advised the court as follows:

> I have been in contact with both Mr. Wyke and also a woman…from Ohio Health in Dublin. I have been advised that Mr. Wyke at some point in the recent past had what I believe was a minor surgery that he was supposed to be recovered from by now but he is now reporting a fever, other symptoms that they believe is consistent with being septic…She provided me a contact number…and said she would email the results of any testing they perform. I asked specifically when he would be cleared to be released from the hospital and they said it would depend on those results. In light of that, Your Honor, I am asking for a continuance at this time. It has further been brought to my attention by the State that very recently Mr. Wyke is a suspect in a pending matter…I learned of this within the last 22 minutes that there was a report by the Ross County Sheriff's Office…[t]hat Mr. Wyke entered a home out on 234 Tabernacle Road in Ross County…Stole money…Did not have permission to be there…

The prosecutor advised that the criminal report was taken the day before on February 14, 2024. The bailiff reminded the court that sentencing was

supposed to be on February 14th, but the court had continued the date to the next day to accommodate appellant's request. [1] A warrant was issued.

{¶6} Appellant eventually came before the court for sentencing on March 4, 2023. At the sentencing hearing, appellant told the trial court that he "never intentionally meant to miss court," but he had "other things going on." The trial court noted that there was a new charge for failure to appear. Concerning appellant's possible sentence, appellant's attorney advised the court:

> If his sentence was going to be nine months or 12 months for just the two cases that he currently has pled to he would rather just start serving those today. But if it's the court was no longer going to be bound and the part of the five to six years that could potentially be imposed here he would-- in light of the way the negotiations went for this- he would rather withdraw his pleas and attempt to proceed to trial on this.
>
> Court:        Yeah, that is a solid no.

{¶7} Prior to imposition of sentence, the trial court asked appellant if he would like to make a statement. Appellant responded:

> Mr. Wyke:  No, Your Honor. I mean I know I did not do the right thing by showing up to court but it was for a reason, but all I can do is go with your actions and change myself and thoughts as I do my time, that's it.

---

[1] Appellant had informed that the 14th was his mother's birthday.

Court:   Very well. The Court has considered the plea negotiations, the statements of counsel and the statements of the defendant. The court has considered the overriding purposes and principles of felony sentencing pursuant to revised code 2929.11. The seriousness and recidivism factors pursuant to Revised Code Section 2929.12 and the guidance as to degree of felony pursuant to Revised Section 2929.13. The Court finds that the defendant not immutable [sic] to any community control sanctions and that prison is an appropriate sanction. Therefore, for the offense of possession of a fentanyl-related compound, a third-degree felony in case number 23CR205, the defendant is sentenced to 18 months in prison. And for Count One, the State elected, Having Weapons While Under Disability, 18 months in prison. Court finds that consecutive service is necessary to protect the public from further crime and to punish the defendant and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The court further finds that the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing. The Court further finds that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. Therefore those cases are to be served consecutive.

{¶8} The trial court continued with post-release control notifications and appellant's appeal rights. Then the court inquired:

Court:         Do you understand your appellate rights?

Wyke:         So, I just got three years?

Court:         Yes, that's correct.

Wyke:         Three years.

Court:         That's correct.

Wyke:         Did you say consecutive or concurrent?  So, I can't file for judicial release?

Court:         You are going to have to talk to your attorney about judicial release.  You just got 18 months on each, consecutive.

* * *

Wyke:         Yes, but I want to know why wasn't I able to withdraw my plea today?

Court:         Because you don't have a valid reason.  I didn't show up to court and now I want to withdraw my plea doesn't cut it.

{¶9} The trial court entered its judgment entry of sentence in both cases on March 6, 2024.  Appellant timely appealed.  Additional pertinent facts are set forth below.

## ASSIGNMENTS OF ERROR

I.     BECAUSE THE RECORD DOES NOT SUPPORT CONSECUTIVE SENTENCES, THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES.

II.     THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HIS PLEA.

{¶10} For ease of analysis, we consider appellant's assignments of error out of order.

Assignment of Error Two - Plea  Withdrawal

{¶11} Appellant argues that the trial court abused its discretion when it failed to entertain arguments on his oral motion to withdraw his plea and, instead, dismissed the motion out of hand without proper consideration. "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Gutierrrez,* 2024-Ohio-at ¶ 44 (4th Dist.), quoting *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).  But "a defendant does not have an absolute right to withdraw a plea prior to sentencing."  *Id*.  "[T]he trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea."  *Id*.  "Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed."  *Id*.  To conclude an abuse of discretion occurred, "[w]e must find that the trial court's ruling was 'unreasonable, arbitrary, or unconscionable.' "  *Id*., quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

Legal Analysis

{¶12} Crim.R. 32.1 "gives no guidelines for a trial court to use when ruling on a presentence motion to withdraw a guilty plea." *Xie* at 526. *See Guttierez* at ¶ 45. "This court and others have identified nine factors that appellate courts should consider when reviewing a trial court's decision regarding a presentence motion to withdraw a guilty plea[.]" *State v. Howard,* 2017-Ohio-9392, ¶ 24 (4th Dist.). These factors are:

> (1) whether "highly competent counsel" represented the defendant; (2) whether the trial court afforded the defendant "a full Crim.R. 11 hearing before entering the plea"; (3) whether the trial court held "a full hearing" regarding the defendant's motion to withdraw; (4) "whether the trial court gave full and fair consideration to the motion"; (5) whether the defendant filed the motion within a reasonable time; (6) whether the defendant's motion gave specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges, the possible penalties, and the consequences of his plea; (8) whether the defendant is "perhaps not guilty or ha[s] a complete defense to the charges"; and (9) whether permitting the defendant to withdraw his plea will prejudice the state.

(Bracketed text in original.) *Id*., quoting *State v. McNeil,* 146 Ohio App.3d 173, 176 (1st Dist. 2001). "Consideration of this 'non-exhaustive' list is a balancing test, and no one factor is conclusive." *State v. Estep,* 2024-Ohio-58, ¶ 18 (4th Dist.), quoting *State v. Ganguly*, 2015-Ohio-845, ¶ 14 (10th

Dist.). "[T]he ultimate question is whether there exists a 'reasonable and legitimate basis for the withdrawal of the plea.' " *Id.*, quoting *Xie* at 527. [2]

## The Nine Factors

{¶13} The record does not indicate whether or not appellant's counsel may be considered "highly competent." Therefore, we would consider this factor as neutral. The sentencing transcript demonstrates that appellant was not afforded a full hearing on his motion to withdraw. And, it cannot be said that the trial court gave lengthy consideration to the motion. However, appellant's motion was orally made at the sentencing hearing. Given the lack of seriousness with which appellant approached his motion to withdraw, i.e., lack of formal filing, we cannot find the trial court's brief consideration and lack of a full hearing to be an inappropriate response. These factors do not militate in appellant's favor. Nor can it be said that appellant filed his motion within a reasonable timeframe.

{¶14} The specific reason for a motion to withdraw a plea is another of the nine factors. Appellant's verbal motion to withdraw his pleas was interposed on March 4, 2024, only after the trial court indicated it would

---

[2] In *State v. Barnes,* 2022-Ohio-4486, the Supreme Court of Ohio "referenced the nine-factor test" but "neither applied it nor rejected it." *Estep* at ¶ 20. Instead, the court held that "when a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." *Barnes* at ¶ 24. "[M]any appellate courts," including this one, have continued "to apply the nine-factor test for withdrawal motions that do not involve the discovery of evidence that would have affected a defendant's decision to plead guilty." *Estep* at ¶ 20-21.

proceed with arraignment on the new case and thereafter, with disposition of the prior two cases to which appellant had previously entered guilty pleas. At that point, appellant's attorney argued:

> Your Honor, Mr. Wyke - - we ask the court to go along with the bargain for recommendation of nine months. I understand that Mr. Wyke was not present at court on disposition, but he is now being or likely being punished for that if he is found guilty of the failure to appear…I know the court might be inclined to depart from the plea agreement based on his failure to appear I would ask the court to consider that he faces up to 18 months as a new charge entirely on that alone in addition to whatever the court does today…would ask the court to go along with the - - the original bargained for sentence of nine months.

> The Court:   That's very intuitive of you.

> Willie:        …He indicated that if the - - if his sentence was going to be nine months of 12 months for just the two cases that he currently has pled to he would rather just start serving those today. But if it's the court was no longer going to be bound  and the part of the five to six years that could potentially be imposed here he would - - in light of the way the negotiations went for this he would rather withdraw his plea and attempt to proceed to trial on this.

{¶15} The only reason for the motion to withdraw, which can be gleaned from this record, is appellant's expectation that on that date he would receive a sentence longer than 9 to 12 months, due to his own choices. Appellant's reason can only be characterized as invalid and a mere

change of heart.  "A mere change of heart is not a legitimate and reasonable basis for the withdrawal of a plea."  *Howard* at ¶ 24.

{¶16} Further, there is no evidence in this record which indicates that appellant is "perhaps not guilty or ha[s] a complete defense to the charges," another and perhaps, more important, of the nine factors.  The final factor, whether permitting the withdrawal will prejudice the State, would be the single factor militating in appellant's favor.  Given that there was no impending trial date at that point, we cannot see how the State would have been prejudiced if the trial court had chosen to grant appellant's motion.

{¶17} We have chosen to discuss two of the above-referenced factors jointly.  The second of the nine factors is whether or not a defendant has received a full Crim.R. 11 hearing prior to entering his plea.  The seventh factor is whether the defendant understood the nature of the charges, the possible penalties, and the consequences of his plea.

## Crim.R. 11

{¶18} Appellant's first change of plea hearing in case number 23CR205 was held on December 13, 2023.  His second change of plea in case number 23CR432 was held on January 23, 2024.  Appellant argues that "it does not appear" that he fully understood his rights.  However, the hearing transcripts belie these assertions.

{¶19} " 'Crim.R. 11(C)(2) governs the acceptance of guilty pleas by the trial court in felony cases and provides that a trial court should not accept a guilty plea without first addressing the defendant personally[.]' " *State v. Doyle*, 2025-Ohio-1234, ¶ 24 (4th Dist.), quoting *State v. Tolle*, 2022-Ohio-2839, ¶ 8 (4th Dist.), citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969).  The underlying purpose of Crim.R. 11 is to convey certain information to a defendant so that they can make a voluntary and intelligent decision regarding whether to plead guilty.  *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981).

Constitutional Rights

{¶20} Crim.R. 11(C)(2)(c) sets out a defendant's constitutional rights. *See Doyle*, at ¶ 28; *State v. Miller*, 2020-Ohio-1420, ¶ 13.  Pursuant to Crim.R. 11(C)(2)(c), a court

> must both inform and determine that the defendant understands that [by pleading no contest or guilty] he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

*See Collins* at ¶ 6.

{¶21} "Unlike a defendant's non-constitutional rights, 'strict compliance with Crim.R. 11(C)(2)(c) is required because constitutional rights are

involved.' " *Doyle*, at ¶ 29, quoting *Collins* at ¶ 7. "If the trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, it is presumed that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *State v. Pierce*, 2024-Ohio-82, ¶ 11 (4th Dist.), citing *State v. Dangler* 2020-Ohio-2765, ¶ 14. Otherwise, "the defendant is not entitled to have the plea vacated without demonstrating prejudice." *Id*. at ¶ 13.

### Non-Constitutional Rights

{¶22} For purposes of a plea bargain, Crim.R. 11(C)(2)(a) and 11(C)(2)(b) require a court to inform a defendant of their non-constitutional rights and ensure they are understood. *See Doyle, supra* at ¶ 25; *State v. Jordan,* 2015-Ohio-4354, ¶ 5. Crim.R. 11(C)(2)(a) requires a trial court to ensure a defendant is "understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(b) requires a trial court to ensure that a defendant "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence."

{¶23} " 'Substantial compliance with Crim.R. 11(C)(2)(a) and (b) is sufficient for a valid plea because they do not involve constitutional rights.' " *Doyle, supra* at ¶ 26, quoting *State v. Collins*, 2019-Ohio-3428, ¶ 7 (4th Dist.), citing *Veney*, 2008-Ohio-5200, at ¶ 14. " 'Substantial compliance means that, under the totality of the circumstances, appellant subjectively understood the implications of his plea and the rights he waived.' " *State v. McDaniel*, 2010-Ohio-5215, ¶ 13 (4th Dist.), quoting *State v. Vinson*, 2009-Ohio-3240, ¶ 6 (10th Dist.).

{¶24} "A defendant who seeks to invalidate a plea on the basis that the trial court partially, but not fully, informed the defendant of his or her non-constitutional rights must demonstrate a prejudicial effect." *Tolle*, 2022-Ohio-2839, at ¶ 16 (4th Dist.), citing *Veney*, at ¶ 17; *State v. Clark*, 2008-Ohio-3748, ¶ 39. "To demonstrate that a defendant suffered prejudice due to the failure to fully inform the defendant of his or her non-constitutional rights, the defendant must establish that, but for the trial court's failure, a guilty plea would not have been entered." *Id*., citing *Clark* at ¶ 32, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "However, when a trial court completely fails to inform a defendant of his or her non-constitutional rights, the plea must be vacated, and no analysis of prejudice is required." *Id.,* citing *Clark* at ¶ 32, citing *State v. Sarkozy,* 2008-Ohio-509, ¶ 22.

{¶25} Based on our review of both plea hearing transcripts, we find that appellant was fully afforded advisement of his Crim.R. 11 constitutional and non-constitutional rights. Appellant contends that the trial court should have engaged him to ensure that he was fully aware that the trial court was not a party to the plea agreement, i.e., was not bound by the recommended plea agreement. Appellant asserts that the trial court did not fully engage with him to ensure that he fully understood the consequences of his plea. We disagree.

{¶26} The December 13, 2023 plea hearing transcript demonstrates that the trial court directly engaged appellant. Appellant advised the court of his name and birthdate; that he was able to read and write; that English was his native language; that he graduated college. Appellant denied being under the influence of medication, drugs, or alcohol. Appellant denied mental illness, disease, or incapacity. Appellant also denied being threatened, coerced, or promises made in exchange for his plea.

{¶27} The trial court continued:

Court:      When we started, I asked your attorney to
            read into the record the terms of the plea
            agreement.

Wyke:       Oh, yes, Your Honor.

Court:      Did you hear what Mr. Wille said?

Wyke: Yes, Your Honor.

Court: Is that the same information you discussed with your attorney before today's hearing began?

Wyke: Yes, Your Honor.

Court: Now Mr. Wyke, I also have before me a two-page written plea of guilty form that appears to bear your signature on both the front and the back page. Did you have an opportunity to review the plea form with your attorney?

Wyke: Yes, Your Honor.

Court: Do you believe you understood what the plea form said?

Wyke: Yes, Your Honor.

Court: And did you voluntarily sign that plea form?

Wyke: Yes, Your Honor.

Court: Do you understand that by signing that plea form, you're making a complete admission of your guilt to the charge contained in this indictment?

Wyke: Yes, Your Honor.

Court: Do you understand that while you and the state have presented to the court a recommendation for sentencing, this court doesn't have to accept it?

Wyke: Yes, Your Honor.

Court:      Do you understand that upon acceptance of your plea of guilt, the court could reject the plea agreement and proceed immediately with sentencing?

Wyke:       Yes, Your Honor.

Court:      All right. Knowing that the court is not obligated to follow the plea recommendation, do you still wish to proceed with your plea today?

Wyke:       Yes, Your Honor.

Court:      All right. Now Mr. Wyke, have you had an opportunity to consult with your attorney about this case?

Wyke:       Yes, Your Honor.

Court:      Has your attorney answered your questions about this case?

Wyke:       Yes, Your Honor.

Court:      Are you satisfied with the legal representation you've received?

Wyke:       Yes, Your Honor.

{¶28} The trial court continued, reading the charges. The trial court inquired as to whether appellant understood the allegations contained in the indictment, and whether he understood that by pleading guilty, he was making a complete admission to the allegations. To both questions, appellant responded affirmatively.

{¶29} The trial court also discussed its expectations of appellant prior to sentencing and with regard to participating in a presentence investigation. The trial court continued:

Court:      So specifically you're going to have to go to the probation department, not today because they're closed, but in the near future, schedule an interview.  Do that interview and give them any information they request from you. Do you understand that?

Wyke:       Yes, Your Honor.  Is Monday fine?

Court:      Monday is fine.  Sure.  Just get it done well in advance of your sentencing. Don't wait till the week before   you're getting sentenced to go and try to do that because you won't have time.

Wyke:       Okay.

Court:      And you've got a third degree which is - - I can easily send you to prison on so don't skip the PSI. Do you see what I'm telling you?

Wyke:       Right, I get it.

Court:      All right.  And I only emphasize that because for some reason, people screw that part up.  I don't know why but a lot of people skip out on that so don't do that.

Wyke:       I hear you.

{¶30} At this point, the trial court engaged appellant, advising each of the constitutional rights, to which appellant responded affirmative

understanding of each.  The trial court specifically inquired:  "Do you believe you understand each of these constitutional rights that I have just read to you?" Again, appellant answered "Yes, Your Honor."  The trial court concluded by asking appellant if he was "certain that this is what you want to do?"  Again, appellant responded, "Yes, Your Honor."

{¶31} At the conclusion of the hearing, the trial court again cautioned appellant as follows:  "Most importantly, like I told you, if you want me to go along with this plea deal, depending on how things fall, make sure you do your presentence investigation, make sure you don't get in trouble between now and sentencing, don't pick up new charges, make sure you're here for your sentencing date."  Appellant responded, "Yes, Your Honor."

{¶32} Our review of the January 23, 2024 change of plea hearing transcript in case number 23CR432 demonstrates that the trial court engaged in the same recitation of appellant's constitutional and nonconstitutional rights, along with a detailed discussion of the terms of the plea agreement and the expectations the court placed upon appellant prior to returning for disposition.  In some portions of the transcript, the trial court's language is nearly word-for-word as contained in the plea hearing transcript in case number 23CR205.  In particular, the trial court again explained:

Court:      Do you understand that while you and the
            State  have  presented  to  the  Court  a

recommendation for sentencing this court does not have to accept it?

Wyke:        Yes, Your Honor.

Court:        Do you understand that upon acceptance of your plea of guilt the court could reject the plea agreement and proceed immediately with sentencing.

Wyke:        Yes, Your Honor.

Court:        Knowing that the court is not obligated to follow the plea recommendation do you still wish to proceed with your plea today?

Wyke:        Yes, Your Honor.

Once again, appellant confirmed that he had consulted with his attorney and was satisfied with his representation.

{¶33} Upon review of the change of plea hearing transcripts, we find that at both plea hearings, appellant was fully apprised of both his constitutional and nonconstitutional rights, and that he understood them. At both hearings we find the trial court fully complied with the requisites of Crim.R. 11. We have no doubt that appellant understood the consequences of his plea, and that the trial court was not bound to accept the plea agreement if appellant failed to abide by the conditions placed upon him. Therefore, this factor does not militate in appellant's favor.

{¶34} Based on the foregoing, we find no merit to appellant's claim that the trial court abused its discretion by failing to grant his verbal motion to withdraw his guilty pleas. Therefore, this assignment of error is without merit and is hereby overruled.

Assignment of Error One - Consecutive Sentence

{¶35} Appellant contends that the trial court relied on his record of possession charges and a "supposed" failure to appear as grounds for imposing consecutive sentences, even after previously indicating it would accept the agreement of the parties for concurrent sentences. Appellant argues that the record does not support the finding that his "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime…" In support, appellant argues that the offenses for which he was sentenced do not "necessarily" pose a danger to the public. While he was convicted for possession a firearm, appellant contends that the gun was not inherently dangerous nor was it used for nefarious purposes. Appellant contends that his crimes for Possession of Fentanyl and Having Weapons Under Disability were "victimless" crimes.

{¶36} Appellant further asserts that his failure to appear for his initial

disposition hearing was due to a valid medical reason.  Appellant concludes that the record does not support the imposition of consecutive sentences. For the reasons which follow, we disagree.

Standard of Review - Felony Sentencing

{¶37} When reviewing felony sentences, appellate courts apply the standard set forth in R.C. 2953.08(G)(2).  *State v. Hill,* 2025-Ohio-798, ¶ 30 (4th Dist.); *State v. Spencer,* 2024 Ohio-59, ¶ 13 (4th Dist.).  R.C. 2953.08(G)(2)(a) provides that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."  Instead, the statute authorizes appellate courts to "increase, reduce, or otherwise modify a sentence" "if it clearly and convincingly finds either of the following:"

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

Legal Analysis

{¶38} The Supreme Court of Ohio has recognized that R.C. 2953.08(G)(2) means that appellate courts ordinarily " 'defer to trial courts' broad discretion in making sentencing decisions.' "  *State v. Collins*, 2024-

Ohio-2891, ¶ 22 (4th Dist.), quoting *State v. Gwynne*, 2023-Ohio-3851, ¶ 11.

(Citations omitted.)  As recently stated by the Supreme Court of Ohio in

*State v. Glover*, 2024-Ohio-5195, ¶ 39:

> That makes sense:  the trial judge presided over the trial and heard the witnesses testify, the defendant made his allocution to the sentencing judge directly, and the trial judge will often have heard directly from the victims at sentencing. Thus, an appellate court's role is not to be a "second-tier sentencing court."

*Hill, supra*, at ¶ 31; *State v. Jones*, 2020-Ohio-6729, ¶ 41-42.

{¶39} In *State v. Hammons,* 2024-Ohio-6128, the Sixth District court

recently provided a thorough discussion of the Supreme Court's decision in

*Glover, supra*.  "The Ohio Supreme Court has made it clear that 'an appel-

late court may not reverse or modify a trial court's sentence based on its sub-

jective disagreement with the trial court.' "  *Hammons, supra,* at ¶ 22, quot-

ing *Glover,* 2024-Ohio-5195, ¶ 45 ("*Glover II*").  In *Glover II,* the Ohio Su-

preme Court reversed the First District's decision in *State v. Glover,* 2023-

Ohio-1153 (1st Dist.) ("*Glover I*").  There the trial court had imposed con-

secutive sentences for multiple counts of aggravated robbery and kidnapping

at gunpoint, for an aggregate prison term of 60 years.  The First District re-

versed the consecutive sentences after finding that the lack of physical harm

to the victims, combined with appellant's lack of criminal history, under-

mined the trial court's proportionality determination.  *Glover I* at ¶ 101.  The

First District compared the aggregate length of the appellant's sentence to the potential sentence for a single instance of violent crime, like murder, and observed that "a person who purposely takes another person's life ..." could be eligible for parole after 15 years, but the appellant "who did not take his victims' lives or cause them physical harm, would have no chance of parole at 15, 20, 25, or even 50 years." *Id.* at ¶ 98.

{¶40} In *Hammons*, the court noted that the Ohio Supreme Court found, among other things, that the First District erred because it did not "limit its review to the trial court's findings." *Glover II* at ¶ 57. *See Hammons*, ¶ 23. The *Glover* court noted that "[t]he court of appeals may have disagreed with the trial court's assessment of the magnitude of the harm inflicted by Glover, but this disagreement with the trial court's assessment is far different from concluding that the record clearly and convincingly does not support the trial court's consecutive-sentence findings." *Id.* at ¶ 55. In *Glover II*, the Supreme Court also found that the First District had "strayed from its role when it compared Glover's sentence to the sentences imposed under other statutes and in other cases" because the appellate review statute, R.C. 2953.08(G)(2), does not permit such a "comparative analysis[.]" *Id.* at ¶ 59.

{¶41} Thus, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the negative. *Collins,* ¶ 22; *Gwynne*, 2023-Ohio-3851, at ¶ 13. Moreover, "clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶42} In general, a statutory presumption exists in favor of concurrent sentences pursuant to R.C. 2929.41(A) and R.C. 2929.14(C)(4) governs the imposition of consecutive terms of imprisonment. *Collins,* ¶ 23; *Glover, supra,* at ¶ 38. To justify the imposition of consecutive terms of imprisonment, "a trial court must make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but the court has no obligation to state reasons to support its findings." *State v. Blair,* 2019-Ohio-2768 ¶ 52 (4th Dist.), citing *State v. Bonnell,*

2014-Ohio-3177, syllabus. This Court explained the findings required to

support the imposition of consecutive sentences:

> "Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences a trial court must find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of three circumstances specified in the statute applies."

*Hill, supra,* ¶ 36, quoting *State v. Cottrill,* 2020-Ohio-7033, ¶ 14 (4th Dist.).

{¶43} Further, as we outlined in *Cottrill*, and more recently in *Collins*,

the three circumstances are:

> "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

*Cottrill* at ¶ 14, and *Collins*, ¶ 24, quoting R.C. 2929.14(C)(4)(a)-(c).

{¶44} The record must support any findings that the applicable statutory sentencing provisions require and made by the sentencing court, such as those contained in R.C. 2929.14(C)(4)(c). *Collins*, ¶ 25; *State v. Drummond,* 2024-Ohio-81, ¶ 11 (4th Dist.). Further, in *Drummond* we observed that the plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and to uphold the trial court's findings unless those findings are clearly and convincingly not supported by the record. *Drummond* at ¶ 12. In *State v. Bonnell,* 2014-Ohio-3177, the Supreme Court of Ohio held, "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *Id.* at ¶ 37.

{¶45} In response to appellant's arguments that the record does not support the finding that he poses a danger to the public; that his crimes were victimless crimes; and that his failure to attend his original sentencing hearing was not significant, the State points out that the trial court made all the requisite findings for consecutive sentences. Moreover, the State points to appellant's prior felony conviction and prior prison sentence; appellant's lengthy negative history with law enforcement; his failure to appear at sentencing without a verified and legitimate reason; the fact that appellant

committed additional offenses while out on bond awaiting sentencing; and appellant's failure to take responsibility or show remorse for his current offenses. Importantly, the State notes that appellant's 18-month sentence for each offense, a three-year aggregate sentence, is within the prescribed statutory range. For the reasons which follow, we agree with the State.

{¶46} The sentencing entries in both cases, 23CR205 and 23CR432, both set forth in pertinent part as follows:

> The Court has considered the record, oral statements, … pre-sentence report, the purposes, and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitations, rehabilitation, and restitution.

{¶47} Each entry further states:

> The Court finds that the consecutive service is necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds that the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing. The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶48} As is well-established, the trial court is not required to use "talismanic words," but, it must be clear from the record that it actually made the findings required by statute. *State v. Bonnell*, 2014-Ohio-3177, syllabus,

at ¶ 37; *State v. Venes* at ¶ 14. The Supreme Court of Ohio further explained that the word "finding" in this context means that the trial court "must note that it engaged in the analysis" and that it "considered the statutory criteria and specifie[d] which of the given bases warrants its decision." *Bonnell* at ¶ 26. As long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.* at ¶ 29.

{¶49} Based on our review of the record, especially the sentencing hearing transcript, this court is well-able to discern that the trial court engaged in the correct R.C. 2929.14(C)(4) analysis. We note that the sentencing entry is consistent with the trial court's statements in open court. And, we note that appellant's individual sentences are well within the range for felonies of the third degree.

{¶50} Furthermore, a review of the pre-sentence investigation report supports the State's contentions that appellant is no stranger to law enforcement, that he has a prior felony record and history of incarceration, and that he has not expressed remorse for his actions. Notably, the author of

appellant's PSI report observed that appellant's ORAS score is 26, "which is high."[3]

{¶51} Nor do we agree with appellant's contention that his offenses are victimless crimes, meriting a lighter sentence.  It has been said that "the possession, use, and distribution of illegal drugs 'represent one of the greatest problems affecting the health and welfare of our population.' "  *State v. Gipson,* 2022-Ohio-2069, at ¶ 53 (6th Dist.), quoting *Treasury Emps. v. Von Raab,* 489 U.S. 656, 668 (1989).  By his action of possession, appellant directly contributed to that problem by placing his community at risk with illicit drugs.  *Gipson, supra,* at ¶ 52, made the finding that "his was not a victimless crime."  *Accord State v. Allen*, 2022-Ohio-1419, ¶ 14 (2d Dist.) (finding trial court's conclusion—that defendant's possession of marijuana was a victimless crime—to be both "incorrect and misleading.")  In *State v. Weber,* 2020-Ohio-6832, the Supreme Court of Ohio observed:

> Research shows that "people who abuse alcohol or illicit drugs are at an increased risk of committing acts of violence." Webster & Vernick, Keeping Firearms from Drug and Alcohol Abusers, 15 Injury Prevention 425 (2009). The victims of such violence are often a gun owner's family members or the gun owner himself…Even Remington Arms, a gun manufacturer that has been in business for over 200 years, embraces the concern as part of its Ten Commandments of Firearm Safety: "Alcohol, drugs and

---

[3] The Ohio Risk Assessment System "ORAS" is a tool selected by the Ohio Department of Rehabilitation and Correction to "assess an adult offender's risk of reoffending and to assess the offender's rehabilitative needs." *State v. Williams*, 2016-Ohio-733, fn 1 (4th Dist.) and Ohio Adm. Code 5120-13-01(A).

guns are a deadly combination. * * * A staggering percentage of the shooting accidents that occur every year involve alcohol or drugs." Remington Arms Company, Ten Commandments of Firearm Safety, available at https://www.remington.com/support/safety-center/ten-commandments-firearm-safety (accessed Sept. 25, 2020) [https://perma.cc/NCD7-TDWB].

*Weber*, at ¶ 37. We are not convinced that the offenses appellant has pled to in these two cases are, per se, victimless crimes.

{¶52} Based on the foregoing, we are convinced that the trial court engaged in the correct analysis and appellant has failed to meet his burden of identifying clear and convincing evidence that the trial court's imposition of consecutive sentences is not supported by the record or is otherwise contrary to law. Accordingly, this assignment of error is also without merit and is hereby overruled.

{¶53} Having found no merit to either of appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT AFFIRMED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**