[Cite as *State v. Wojciechowski*, 2025-Ohio-5673.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-25-010

    Appellee                                     Trial Court No. 2020CR0292

v.

Edward J. Wojciechowski            **DECISION AND JUDGMENT**

    Appellant                                    Decided: December 19, 2025

* * * * *

Paul A. Dobson, Esq., Wood County Prosecutor, and
Pamela A. Gross, Esq., Chief Assistant Prosecuting Attorney, for appellee.

Anthony J. Richardson, II, Esq., for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Edward J. Wojciechowski, appeals from a judgment entered by

the Wood County Court of Common Pleas imposing consecutive 10-month prison

sentences following revocation of his community control sanctions. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case and of the Facts**

{¶ 2} On July 23, 2020, appellant was charged in a four count indictment with two counts of possession of a fentanyl-related compound, in violation of R.C. 2925.11 (A) and (C)(1)(a), both felonies of the fifth degree, and two counts of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1) and (F)(1), both misdemeanors of the fourth degree.

{¶ 3} On May 3, 2021, appellant pleaded guilty to both charges of possession of a fentanyl-related compound, and the State dismissed the misdemeanor charges. The trial court explained to appellant that each charge of possession of a fentanyl-related compound carries, among other things, up to 12 months in prison. The trial court further advised that if appellant were sentenced to prison, he could be ordered to serve those charges consecutively, for an aggregate sentence of two years in prison.

{¶ 4} Regarding the facts underlying the plea, the State stated the following:

> Your Honor, had the case proceeded to trial, the State would have brought in Trooper Hoffman, as well as the crime lab, that would have testified that Trooper Hoffman observed the defendant failed to stop at a stop sign on 582 exit ramp in Wood County, Ohio. The defendant was observed to be impaired. A probable cause search of the vehicle was conducted where paraphernalia and needles were discovered under the passenger seat. The defendant stated, quote, If it is in my car, it must be mine, end quote. Items: Foil bundle and one syringe tested positive for fentanyl. And this occurred on the said date in Wood County, Ohio.

2.

Defense counsel confirmed that there was sufficient evidence to support convictions for the counts to which appellant was pleading. The court determined that appellant was eligible for intervention in lieu of conviction, stayed all criminal matters in the case, and ordered two years of supervision along with conditions of intervention. Those conditions included that appellant would abstain from the use of all illegal substances and alcohol and that he would submit to random testing for both drugs and alcohol. At the end of the hearing, the trial court admonished appellant as follows:

> THE COURT: Do you understand what happens if you're successful with intervention? You've been on intervention before.
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: So you understand that after two years if you've completed the conditions, that the matter is going to be dismissed against you.
>
> THE DEFENDANT: I do understand.
>
> THE COURT: That's the privilege that you are given. You understand what happens if there's a violation?
>
> THE DEFENDANT: I do understand.
>
> THE COURT: All right. You're going to be brought back into court. There will be a hearing. And the Court could revoke intervention in lieu and then find you guilty of these two felonies. I know you're familiar with the process. I'm sure [defense counsel] has gone over that again with you. But it is a privilege to be on intervention.

{¶ 5} On October 17, 2022, the trial court held a hearing on an alleged violation of the conditions of appellant's intervention plan. The violation was stated to have occurred on October 11, 2022, when appellant, having appeared for a scheduled office

3.

appointment, submitted to a urinalysis for a drug screen that yielded a positive result for cocaine. According to the State, appellant also admitted to using crack cocaine on or about October 9th. Following the State's presentation, appellant admitted to the violation and waived a hearing on the matter. The trial court revoked appellant's intervention, stating:

> Okay. Then as [defense counsel] has indicated, it is a privilege to be on intervention in lieu of conviction. You did – and you were granted that privilege because of your record, that it was very minor. You were given that opportunity. And as your attorney has indicated and that you're well aware, that privilege can be revoked with any slip-up.

> So with that, the Court does find, given the allegation that you have violated the conditions of your intervention in lieu, I do lift the stay on the proceedings. I revoke your right to intervention in lieu. And I find you guilty of counts 1 and 2, possession of fentanyl-related compound, both felonies in the fifth degree.

{¶ 6}  Sentencing took place on December 12, 2022. The court noted that a PSI report had been prepared. The PSI revealed, in addition to several traffic offenses, a few notable charges and convictions. In 2016, appellant was charged with illegal processing of drug documents and Medicaid fraud. Those charges were dismissed upon appellant's successfully completing a one-year term of intervention in lieu of conviction supervision. In 2019, appellant was convicted of obstructing official business. He was placed on probation for that offense and ordered, as part of his sentence, to participate in drug/alcohol treatment. Finally, in 2019, appellant was convicted of OVI, in connection with the traffic stop that gave rise to the instant offenses. In sentencing appellant for the two counts of possession of a fentanyl-related compound, the trial court stated:

4.

There are no factors that suggest your conduct was any more serious. The Court notes that you did not cause or expect to cause any physical harm to any persons or property in committing this crime. There are a couple of factors that indicate that recidivism is more likely, and that is that you do have a history of criminal convictions. You've not responded favorably to sanctions previously imposed for those convictions. And the Court does note that you were not adjudicated a delinquent child.

With that, the trial court sentenced appellant to a two-year period of community control. Among the imposed conditions of community control was that appellant would be subject to random drug and alcohol screens and was not to ingest any illegal substances, any substance containing THC, or alcohol. The trial court instructed appellant that if he violated the terms of his community control, the court could extend the period of supervision up to five years, could impose a more restrictive sanction, including jail time or a financial sanction, or could impose a prison term of 12 months in prison on each count. The trial court further instructed that any prison terms imposed could be ordered to be served consecutively, for a total of 24 months in prison.

{¶ 7} On May 20, 2024, a hearing was held for an alleged community control violation. The State represented that on April 16, 2024, appellant appeared for a drug screen appointment with Wood County probation and submitted a sample that yielded a positive result for cocaine and fentanyl. According to the State, appellant signed an admission statement admitting to using cocaine and possibly fentanyl on April 14, 2024. Appellant admitted to the violation, and the trial court warned appellant that by admitting the violation and waiving a hearing, he was placing himself in a position where the court could revoke his community control and send him to prison for 12 months on each of the

5.

two counts to which he had pleaded guilty, for an aggregate term of imprisonment of 24 months. Appellant stated that he understood. The trial court extended appellant's community control by one year, placed him under intensive supervision, and continued his prior conditions.

{¶ 8} Two more violations -- each for testing positive for cocaine -- came on June 18 and July 12, 2024, respectively. A community control violation hearing was scheduled for July 15, 2024. On that date, appellant waived hearing and admitted to both violations. Once again, the trial court advised appellant that in waiving the hearing he was placing himself in a position where the court could revoke his community control and impose 12-month prison terms on each count of possession of a fentanyl-related compound. And, once again, the trial court continued appellant on community control, but this time with the added condition that appellant complete the SEARCH in-patient drug treatment program. The trial court commented that "it's very frustrating for this Court and for certainly your attorney and those that deal with your addiction…. I hope that you do not squander this opportunity, sir."

{¶ 9} Appellant successfully completed the SEARCH program on November 21, 2024. But just six days after his release from the program, he called in sick for a probation appointment. A probation officer went to his house and requested a urine sample but appellant did not comply. Appellant was instructed to report for an office appointment on December 2, 2024, in order to get the drug screen, but he failed to call or appear. A third appointment was scheduled for December 3, 2024, but, again, he failed to

6.

appear. The trial court issued a bench warrant on December 3, 2024. Appellant was apprehended on the warrant approximately two months later, in February 2025.

{¶ 10} A community control violation hearing was held on March 10, 2025. The trial court briefly summarized each of the November and December 2024 incidents. It then inquired of defense counsel as to whether the trial court's summary was consistent with defense counsel's understanding of the alleged "violation." Defense counsel indicated that it was and stated, "We would stipulate to the violation." Defense counsel also indicated that appellant would be waiving a hearing on the matter. The trial court addressed appellant and reminded him that in admitting the violation and waiving the hearing, he was placing himself in a position where the court could revoke community control and send him to prison for 12 months on each count of possession of a fentanyl-related compound, for an aggregate potential term of 24 months in prison. Appellant said he understood. After hearing from counsel for both parties and the defendant himself, the trial court addressed appellant, stating in relevant part:

> The Court has reviewed your record and certainly your conduct while you've been on community control and I think, you know, you've been with the Court on this case since 2021 where you were granted two years of intervention in lieu of conviction and that was revoked. You had a violation in 2022 and we gave you an additional year of community control, and that was based on drug usage. And then June of 2024, usage of cocaine. And then there was an addendum, another positive for cocaine. You were given SEARCH or treatment, lock down treatment on at least count 1…for the possession of fentanyl charge. And then here we are with another violation.
>
> I think everyone in this room is exacerbated [sic] and frustrated…. And the Court agrees it's a disease. But the tools that the Court has in assisting you

in fighting that disease are done. The Court doesn't have anything else to assist you.

Taking all these matters into consideration along with…the purposes and principles of felony sentencing, the Court finds that community control would be demeaning to the latest conduct and a prison term is consistent with the purposes and principles of felony sentencing.

With that, community control is revoked. You will serve a prison term on count 1 of 10 months in prison and on count 2, 10 months in prison, and those will be served consecutively for a total of 20 months in prison.

The Court does find that consecutive sentences is [sic] necessary to protect the public from future crime by you as well as necessary to punish you, as illustrated by your history of criminal convictions and more specifically, your conduct while you've been on community control. The Court also finds that consecutive sentences are not disproportionate to the seriousness of your conduct and the danger that you pose to not only the public but yourself. And that your history of criminal conduct while you've been on community control demonstrates that consecutive sentences are necessary to protect the public and you from future crime by you.

The trial court found appellant TCAP-eligible and sentenced him to serve his prison term in the Wood County Justice Center.

{¶ 11} The trial court's March 19, 2025 judgment entry reflects the sentence that was imposed in court and reiterates the trial court's findings with respect to consecutive sentences. It is from this judgment entry that appellant now appeals.

## Assignments of Error

{¶ 12} On appeal, appellant asserts the following assignments of error:

I.     The trial court committed error by imposing consecutive prison terms without necessary findings being supported in the record.

II.    The trial court committed error by failing to comply with sentencing statutes when imposing sanctions on appellant a third time.

III.     The trial court committed error by sentencing appellant three times for the same offenses in violation of his right against double jeopardy.

## Law and Analysis

### First Assignment of Error

{¶ 13} In his first assignment of error, appellant asserts that remand is necessary because "required findings to impose consecutive sentences against him are not supported in the record."

{¶ 14} R.C. 2953.08(G)(2), which guides our review of consecutive felony sentences, provides that an appellate court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing" if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

{¶ 15} Appellant's first assignment of error challenges the trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4). Pursuant to this section, where a trial court imposes multiple prison terms for convictions of multiple offenses, it may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that

9.

consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 16} "Conformity with R.C. 2929.14(C)(4) requires the trial court to…note that it engaged in the analysis and that it has considered the statutory criteria and specified[d] which of the given bases warrants its decision." (Internal quotations omitted and second brackets in original.) *State v. Jones*, 2024-Ohio-1083, ¶ 14. "A trial court need not explain its reasoning for its findings as long as the record contains some evidence to support the trial court's findings." *State v. McIntoush*, 2024-Ohio-2284, ¶ 18 (6th Dist.); *see also Jones* at ¶14. Consecutive sentences will be upheld "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." (Internal quotations omitted.) *Jones* at ¶ 14.

10.

{¶ 17} The "clear and convincing evidence" required by R.C. 2953.08(G)(2) is "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Gwynne*, 2023-Ohio-3851, ¶ 14, quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. An appellate court "must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences." *Id.* at ¶ 15. The reviewing court "may not reverse or modify a trial court's sentence based on its subjective disagreement with the trial court." *State v. Glover*, 2024-Ohio-5195, ¶ 45. Nor may it "modify or vacate a sentence on the basis that the trial court abused its discretion." *Id.*

{¶ 18} As relevant to our analysis, the trial court found that consecutive sentences were necessary to protect the public from future crime by appellant and that such was illustrated by appellant's history of criminal convictions, and, more specifically, by his history of criminal conduct while on community control. Appellant insists, however, that his own criminal activities resulting in community control violations did not pose any danger to the community.

{¶ 19} Several courts, including this one, have recognized that "'the possession, use, and distribution of illegal drugs "represent one of the greatest problems affecting the health and welfare of our population."'" *State v. Wyke,* 2025-Ohio-4990, ¶ 51 (4th Dist.),

11.

quoting *State v. Gipson*, 2022-Ohio-2069, ¶ 53 (6th Dist.), quoting *Treasury Emps. V. Von Raab*, 489 U.S. 656, 668 (1989). "By his action of possession, [a defendant] directly contribute[s] to that problem by placing his community at risk with illicit drugs." *Id.*

{¶ 20} In this case, appellant was sentenced to prison after nearly four years of attempted rehabilitation and multiple violations of court orders worthy of punishment, including testing positive for drugs, missing probation appointments, and absconding from probation. His violations were not minor or isolated, and all of them suggested that he was using again, thereby placing his community at risk with illicit drugs. Because appellant did not meet his burden to show by clear and convincing evidence that his consecutive sentences are not supported by the record, we have no basis for concluding that appellant's consecutive sentence is contrary to law. Accordingly, appellant's first assignment of error is found not well-taken.

**Second Assignment of Error**

{¶ 21} Appellant argues in his second assignment of error that his sentence of two consecutive ten-month prison terms was contrary to law because it was improperly based on a technical violation of the conditions of his community control. The State disputes appellant's characterization of the violation as technical and asserts that the trial court, in imposing a reserved prison sentence for appellant's, in fact, non-technical violation of court ordered community control sanction conditions, did not err.

{¶ 22} "R.C. 2929.15(B)(1)(c) allows a trial court to impose a prison term if a defendant violates the conditions of his or her community control. However, a prison

term for the violation of a community control sanction imposed for a fifth-degree felony offense shall not exceed ninety days if the violation was a technical violation." *State v. Brauchler*, 2024-Ohio-2994, ¶ 31 (5th Dist.), citing R.C. 2929.15(B)(1)(c)(i). A prison term imposed following a technical violation of the conditions of community control that exceeds the applicable time limits established in R.C. 2929.15(B)(1)(c) is contrary to law. *State v. Whitacker*, 2020-Ohio-4249, ¶ 12 (6th Dist.), citing *State v. Goetz*, 2019-Ohio-5424, ¶ 17 (6th Dist.).

{¶ 23} We note that in cases where a defendant is sentenced to prison following a community control violation, a "trial court is not required to give findings or reasons for the prison term imposed within the statutory range." *State v. Calhoun*, 2019-Ohio-228, ¶ 21 (6th Dist.), citing *State v. Mincer*, 2018-Ohio-5199, ¶ 15 (6th Dist.). All that is required is that the defendant be notified at the time of his original sentencing that a prison term of the length that was ultimately imposed was an option following a future community control violation. *See id.* at 21, citing *State v. Brooks*, 2004-Ohio-4746, paragraph two of the syllabus and R.C. 2929.15(B). Here, a ten-month prison term is undisputedly within the statutory range for a fifth-degree felony. *See* R.C. 2929.14(A)(5). In addition, appellant was properly notified -- both at his original sentencing and repeatedly thereafter -- that following a community control violation, prison sentences of up to 12 months could be imposed for each count of possession of a fentanyl-related compound, and that those sentences could be ordered to be served consecutively for an aggregate prison term of 24 months.

13.

{¶ 24} In *State v. Nelson*, 2020-Ohio-3690, the Supreme Court of Ohio held that a totality of the circumstances analysis determines whether a violation of community control sanctions constitutes a technical violation. Specifically, the court held:

> [A] violation is 'nontechnical' if, considering the totality of the circumstances, the violation concerns a condition of community control that was 'specifically tailored to address' matters related to the defendant's misconduct or if it can be deemed a 'substantive rehabilitation requirement which addressed a significant factor contributing to' the defendant's misconduct.

*Id.* at ¶ 26, quoting *State v. Davis*, 2018-Ohio-2672, ¶ 17, 18 (12th Dist.). On the other hand, "a violation is 'technical' when the condition violated is akin to 'an administrative requirement facilitating community control supervision.'" *Id.*, quoting *Davis* at ¶ 18. "There is no single factor that determines whether a violation is technical or nontechnical." *Id.*

{¶ 25} After *Nelson* was decided, the General Assembly amended R.C. 2929.15 (on April 12, 2021) to define a "technical violation" under the statute. *See* H.B. 1. Although "no longer controlling," *see McManus* at ¶ 23, "the holding in *Nelson* remains instructive." *State v. Everett*, 2023-Ohio-1243, ¶ 12 (3d Dist.).

{¶ 26} R.C. 2929.15(E) sets forth the applicable definition of a "technical violation" as follows:

> (E) As used in this section, "technical violation" means a violation of the conditions of a community control sanction imposed for a felony of the fifth degree, or for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense, and to which neither of the following applies:

14.

(1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the community control sanction.

(2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal demonstrates to the court that the offender has abandoned the objects of the community control sanction or condition.

{¶ 27} "The application of a statute is a question of law which we review de novo." *McManus* at ¶ 25.

{¶ 28} In the current case, appellant's violations resulting in his prison term included both failures to report to probation and failures to submit to random drug screens. Although appellant argues that he admitted only to the violation of failing to report to probation – and for a period of less than a week, rather than over a period of two months -- a review of the record strongly indicates that appellant admitted to all of the violations, without limitation, and without any suggestion that he only wished to admit to failure to report. The record shows that appellant failed to submit to drug screens at the field visit, on December 2, and thereafter by absconding, and that he failed to report to probation on December 2, December 3, and thereafter. Although a "one-time failure to appear when required to meet with one's supervisor *could* constitute a technical violation," *see McManus* at ¶ 27, we conclude that appellant's violations were not merely technical, but rather demonstrated an unwillingness to participate in the community control sanctions. His disappearance for two months thereafter until he was arrested shows that he abandoned the goals of his community control condition or sanction.

15.

{¶ 29} As appellant's violation of his community control was not a technical violation, the 90-day prison term limitation set forth in R.C. 2929.15(B)(1)(c) was inapplicable. The trial judge had the authority to impose -- and did not abuse his discretion in imposing -- the ten-month prison terms. As explained above, the trial court also acted within its authority in ordering that the two ten-month prison terms be served consecutively. Because appellant's sentence was not contrary to law, his second assignment of error is found not well-taken.

**Third Assignment of Error**

{¶ 30} Appellant argues in his third assignment of error that he was unlawfully subjected to double jeopardy, because following the imposition of his initial community control sentence, the trial court sentenced him to the SEARCH program, and then to a prison sentence, "all for the same drug abuse crimes."

{¶ 31} The Double Jeopardy Clause, set forth in the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The United States Supreme Court has recognized that "double jeopardy principles do not prohibit the imposition of every additional sanction that could be interpreted as 'punishment in common parlance." *State v. Martello*, 2002-Ohio-6661, ¶ 8, citing *Hudson v. United States*, 522 U.S. 93, 989-99 (1997). (Additional citation omitted.) "Rather, double jeopardy principles protect 'only against the imposition of multiple criminal punishments for the same offense.'" *Id.*

{¶ 32} R.C. 2929.15(A)(1) provides in relevant part that "[i]f in sentencing an offender for a felony the court is not required to impose a prison term…the court may directly impose a sentence that consists of one or more community control sanctions." If an offender violates the conditions of a community control sanction, the sentencing court may lengthen the term of the community control sanction, may impose a more restrictive community control sanction, or may impose a prison term on the offender. R.C. 2929.15(B)(1)(a), (b) and (c); *see also State v. Calhoun*, 2019-Ohio-228, ¶ 6 (6th Dist.).

{¶ 33} Appellant's argument to the contrary notwithstanding, multiple Ohio appellate courts have held that "sanctions imposed for violating community control do not constitute criminal punishment for purposes of double jeopardy." *State v. English*, 2021-Ohio-850, ¶ 25 (8th Dist.), citing *State v. Peters*, 2009-Ohio-5836, ¶ 14 (8th Dist.); *see also State v. Butcher*, 2017-Ohio-1544, ¶ 102 (4th Dist.) (sanctions imposed for violating community control do not constitute "criminal punishment" for purposes of double jeopardy analysis); *State v. Black*, 2011-Ohio-1273, ¶ 13 (2d Dist.) (where a community control violation occurred based on a violation of law, the trial court's imposition of a prison sentence is not a punishment); *State v. Myers,* 2004-Ohio-3715, ¶ 23 (5th Dist.) (finding that a community control violation finding was not a second penalty for a new offense).

{¶ 34} "The imposition of a prison sentence is not a punishment for the new offense, but is a consequence of the original conviction." *English* at ¶ 25, citing *Black* at ¶ 13 (upon finding that a community control violation occurred based on a violation of law,

the trial court's imposition of a prison sentence is not a punishment for the new offense but, rather, is a continuing consequence of the original conviction); *see also Butcher* at ¶ 103 (court-imposed sanction for appellant's community and postrelease control violations did not constitute "criminal punishment" for purposes of double jeopardy analysis; instead, the sanctions were a continuation of the original sentences imposed in the prior criminal matter).

{¶ 35} Applying the foregoing law to the circumstances of this case, we find that appellant's sentence of imprisonment, imposed for violating his community control, was not a criminal punishment for purposes of double jeopardy, but rather was a continuing consequence of his original convictions for possession of a fentanyl-related compound. As his sentence was not contrary to law on the basis of a double jeopardy violation, Appellant's third assignment of error is found not well-taken.

### Conclusion

{¶ 36} The judgment of the Wood County Court of Common Pleas is affirmed. All pending motions are denied as moot. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Christine E. Mayle, J. | |
| | JUDGE |
| Gene A. Zmuda, J. | |
| | JUDGE |
| Myron C. Duhart, J. CONCUR. | |
| | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.